UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**YUSUF TOURAY,**

    **Plaintiff,**

  v.

**ROBERT K. LYNCH,**

    **Defendant.**

Case No. 1:25-cv-683

JUDGE DOUGLAS R. COLE
Magistrate Judge Gentry

## OPINION AND ORDER

Plaintiff Yusuf Touray, a Gambian citizen, moves for a temporary restraining order, (Doc. 2), against Defendant Robert K. Lynch, the Field Office Director for Enforcement and Removal Operations for U.S. Immigration and Customs Enforcement (ICE). Specifically, he asks that the Court prevent Lynch "from removing or deporting [Touray] from the United States." (*Id.* at #17). Given the demanding standard required for such relief, the Court finds that Touray has failed to make the necessary showing, in particular as to any likelihood of success on the merits. The Court therefore **DENIES** the Motion. (*Id.*).

## BACKGROUND

Many of the facts presented to date are straightforward and undisputed. Touray is a Gambian citizen. (Pet., Doc. 1, #3). In 2016, he entered the United States at the San Ysidro Port of Entry. (*Id.*; Wissel Decl., Doc. 5-1, #37). Touray applied for asylum and withholding of removal, but the Immigration Judge (IJ) denied the asylum application and entered a final order of removal on April 15, 2019. (Doc. 1,

#4). Touray appealed the IJ's decision to the Board of Immigration Appeals, but it dismissed his appeal on September 15, 2022. (Doc. 5-1, #37). It appears Touray did not further appeal that order. ICE released Touray on supervision based on Form I-220B, Order of Release on Supervision. (Doc. 1, #4). Neither side disputes that Touray complied with the conditions of supervision. On August 13, 2025, Touray reported for a "routine ICE check-in appointment," and ICE detained him with the intent to remove him from the United States back to Gambia. (*Id.*; *see* Doc. 5-1, #37–38).

The government's response adds some additional, more recent details. Since August 13, 2025, Touray has been in custody at the Butler County Correctional Complex in the Southern District of Ohio. (Doc. 5, #21). Since then, on August 25, 2025, ICE requested travel documents from the Gambian consulate in Washington, D.C. (Doc. 5-1, #37). The Gambian consulate interviewed Touray, and "ICE [] anticipates the Gambian consulate will issue the petitioner a travel document later [on Friday, September 26, 2025] or by Monday, September 29, 2025." (*Id.*). It appears that this travel document will accelerate the removal process. From there, the government alleges that ICE "intends" to move Touray to Alexandria, Louisiana, and then to Mesa, Arizona, before removing him to Gambia on October 1, 2025. (*Id.*). That said, the government has more recently indicated in an email to the Court that, in light of representations it made to the Court last week at a telephone conference, it intends to hold off at least a bit to allow the Court an opportunity to address this motion.

Touray filed a Petition for Writ of Habeas Corpus on September 16, 2025. (Doc. 1). In that petition, he acknowledges that the REAL ID Act of 2005 "deprives the district court of habeas jurisdiction to review orders of removal." (*Id.* at #2); *see* 8 U.S.C. § 1252(a)(5) (codifying a portion of the REAL ID Act to the effect that "a petition for review filed with an appropriate court of appeals … shall be the sole and exclusive means for judicial review of an order of removal"). So Touray purports to make a narrower challenge. He contends only that his "continued detention" is the problem. That detention, he says, violates both (1) his due process rights under the Constitution, (Doc. 1, #5–6), and (2) his rights under 8 U.S.C. § 1231(a)(3), which limits detention to 90 days, (*id.* at #6). He notes that ICE previously did not remove him within 90 days and instead released him on supervision. (*Id.* at #7). Because circumstances have not significantly changed, he argues that "removal is [not] significantly likely in the [] future." (*Id.*). So he says he is concerned that, without judicial relief, he stands to be detained without a "legal basis" for an "indefinite" period of time. (*Id.* at #4, 7). Beyond that, he requests attorney's fees and costs if successful, although this is more properly characterized as a form of relief than a claim. (*Id.* at #8). As relief, Touray requests the Court issue a writ of habeas corpus to the government to release Touray; alternatively, order a bond hearing before an IJ; or, at minimum, order the government to not transfer Touray out of the Southern District of Ohio during the pendency of this proceeding. (*Id.*).

Three days after he filed his petition, he filed an Emergency Motion for Temporary Restraining Order to Stay Removal Pending Resolution of Habeas

3

Petition (Doc. 2). There, he argues that removal would prevent the Court from reaching the merits of his arguments against indefinite detention, as it would "effectively moot the case." (*Id*. at #14). In other words, he basically asks the Court to order his continued detention in the United States to preserve his challenge to the legality of that detention.

## LEGAL STANDARD

"A temporary restraining order is an extraordinary remedy that should only be granted if the movant can clearly show the need for one." *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 860 (S.D. Ohio 2008) (citation omitted). Ultimately, "the purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996). A plaintiff "bears the burden of establishing entitlement to a temporary restraining order." *Mesa Indus., Inc. v. Charter Indus. Supply, Inc.*, No. 1:22-cv-160, 2022 WL 1044720, at *4 (S.D. Ohio Apr. 7, 2022). "To satisfy this burden, [a plaintiff] must establish [his or her] case by clear and convincing evidence." *Id*. And that in turn means that a plaintiff "may not merely rely on unsupported allegations, but rather must come forward with more than 'scant evidence' to substantiate their allegations." *Patel v. AR Grp. Tenn., LLC*, No. 3:20-cv-52, 2020 WL 5849346, at *4 (M.D. Tenn. Oct. 1, 2020) (collecting cases); *accord Amedisys, Inc. v. Interim Healthcare of Wichita, Inc.*, No. 14-1357, 2015 WL 1912308, at *2 (D. Kan. Apr. 27, 2015) ("[W]holly conclusory statements alone will not constitute irreparable harm.").

4

Whether a movant is entitled to this extraordinary relief is governed by the same four factors that apply to preliminary injunctions. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) ("In determining whether to stay the TRO, we consider the same factors considered in determining whether to issue a TRO or preliminary injunction." (cleaned up)); *ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016) ("The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." (citation omitted)). Those factors are: (1) whether the movant has a substantial likelihood or probability of success on the merits; (2) whether the movant will suffer irreparable injury if injunctive relief is not granted; (3) whether the injunctive relief would unjustifiably harm a third party; and (4) whether the public interest would be served by issuing the injunctive relief. *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985).

Failure to meet the likelihood-of-success prong is not dispositive. *See id.* at 1270. But if the movant has not demonstrated a high likelihood of success on the merits, preliminary equitable relief is permissible only if there are "serious questions going to the merits *and* irreparable harm which decidedly outweighs any potential harm to the defendant if [a TRO] is issued." *Id.* (emphasis in original) (*quoting Friendship Materials Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). And, "a finding that there is simply no likelihood of success on the merits is usually fatal."

*Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir.1997)).

### ANALYSIS

The Court's analysis begins and ends with Touray's likelihood of success. Specifically, the Court concludes that Touray has "no likelihood of success on the merits," *Gonzales*, 225 F.3d at 625, and thus it **DENIES** his request for a TRO.

The principal problem that the Court sees with Touray's petition is that the Court lacks jurisdiction to consider his removal. Touray concedes that he is subject to a valid removal order. (Doc. 1, #4). And he further concedes, as he must, that this means that the REAL ID Act deprives this Court of any jurisdiction to consider his removal pursuant to that order. (*Id.* at #2). He may well have other avenues open to him, for example, seeking in the Immigration Courts to reopen that now more-than-five-year-old removal order. Indeed, during the telephone conference to discuss this motion, his attorney said that Touray is in fact endeavoring to do just that. But, be that as it may, all agree that *this* Court does not have jurisdiction to question the validity of that removal order. (*Id.*; Doc. 5, #27–30). So to the extent that Touray's Petition challenges his removal, the Court lacks jurisdiction to consider that challenge.

Recognizing that, Touray attempts to limit his challenge here to the legality of his *detention*, not his *removal*. (Doc. 1, #5–7 (referencing "continued detention")). The Court does have jurisdiction to review challenges to detention. *Zhen v. Doe*, No. 3:25-cv-1507, 2025 WL 2258586, *3 (N.D. Ohio Aug. 7, 2025) (collecting cases). And on

6

that front, Touray properly notes that a removal order does not give ICE authority to indefinitely detain a person subject to removal under that order. (*Id.* at #6–7 (citing *Zadvydas v. Davis*, 533 U.S. 678, 689–90 (2001))). He further says that, given past events in his own case—he has been subject to a removal order for more than five years and has yet to be removed—he fears that his detention here may well be indefinite, "as [his] removal is not reasonably foreseeable." (*Id.* at #6).

But the problem with that argument as the basis for a TRO is that he has no likelihood of success on the merits of that claim. His detention to date, some six weeks, fits comfortably within the reasonable amount of time that the government can detain a person subject to a removal order in connection with deporting them. *Zadvydas*, 533 U.S. at 701 (recognizing a six-month period as "presumptively reasonable"). Moreover, 8 C.F.R. § 241.4(l)(2)(iii) states: "Release [under supervision] may be revoked in the exercise of discretion when, in the opinion of the revoking official: … It is appropriate to enforce a removal order or to commence removal proceedings against an alien." This provision expressly contemplates that the Executive Branch has discretionary authority to detain an alien prior to removal, even if the alien previously had been placed on supervision. In other words, the regulation expressly contemplates detaining Touray again to effectuate his removal pursuant to the earlier removal order. And the government informs the Court that Touray will be removed to Gambia in the immediate future.[1] (Doc. 5, #22). Thus, the

---

[1] The government claims that ICE personnel had intended to remove Touray to Gambia on Wednesday, October 1, of this week and was going to move him to Arizona this past weekend in connection with that. But in light of a representation the government made to the Court last Thursday at the telephone conference to discuss this motion, the Court understands that

7

Court concludes that Touray has not shown any likelihood that he can establish that he will be subject to indefinite detention. As a result, the Court declines to enter an order that would extend his detention by preventing his removal.

Because Touray has not shown any likelihood of success on the merits, the Court need not consider the other factors. *See Gonzales*, 225 F.3d at 632.

## CONCLUSION

Touray has failed to meet his "burden of establishing entitlement to a temporary restraining order," by "clear and convincing evidence." *Mesa Indus.*, 2022 WL 1044720, at *4. Thus, the Court **DENIES** Touray's Motion. (Doc. 2).

**SO ORDERED.**

September 30, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

the government has held off to allow the Court a chance to consider this motion, which the Court appreciates.